In the Matter of PENN CENTRAL
TRANSPORTATION COMPA-
NY, Debtor.
Petition of BANK OF NEW JERSEY.
No. 70–347.

United States District Court,
E. D. Pennsylvania.

Oct. 7, 1974.

Carl Helmetag, Jr., Philadelphia, Pa.,
for the Trustees, PCTC.

Victor P. Petrone, Curtin & Heefner,
Morrisville, Pa., for The Bank of New
Jersey.

Copal Mintz, New York City, for Irv-
ing and Harold Domnitch.

T. Sergeant Pepper, Gratz, Tate, Spie-
gel, Ervin & Ruthrauff, Philadelphia,
Pa., for Richard Joyce Smith, Trustee,
New York, New Haven & Hartford RR.
Co.

## MEMORANDUM AND ORDER
### NO. 1687

FULLAM, District Judge.

The Bank of New Jersey, as Inden-
ture Trustee under a mortgage of the
New York Connecting Railroad Compa-
ny, has petitioned this Court to restrain
two individuals named Irving and Har-
old Domnitch from proceeding with cer-
tain litigation in the Supreme Court of
the State of New York. The Trustees
of the Penn Central support the position
of the bank, and so does New York Con-
necting itself.

In the New York litigation, the Domnitch interests are trying to obtain specific performance of an alleged agreement for the sale to them of certain air rights owned by New York Connecting. This litigation, and the present controversy over whether it should be permitted to continue, raise issues which are both complex and elusive.

In 1945, the mortgage of which the Bank of New Jersey is now the Indenture Trustee became a first lien upon all property of New York Connecting. In 1965, in consideration of the sum of $5,000, New York Connecting granted to Messrs. Domnitch an option, for the term of two years and four months, to purchase certain air rights.

In 1969, New York Connecting leased all of its properties to Penn Central for a term of ten years. On June 21, 1970, Penn Central went into reorganization under § 77 of the Bankruptcy Act. On or about October 1, 1970, New York Connecting's mortgage became in default.

On November 16, 1970, there was executed a document which purports to be a "rider" to the 1965 option agreement. Pertinent parts of this document are as follows:

"RIDER TO AGREEMENT MADE OCTOBER 8, 1965, BETWEEN THE NEW YORK CONNECTING RAILROAD COMPANY and IRVING DOMNITCH and HAROLD DOMNITCH which modifies the said agreement to the following extent:

"1. The seller is NEW YORK CONNECTING RAILROAD COMPANY AND GEORGE P. BAKER, RICHARD C. BOND, JERVIS LANGDON, JR. AND WILLARD WIRTZ, trustees of the property of PENN CENTRAL TRANSPORTATION COMPANY, debtor-lessee through C. NICHOLS, manager-real estate, and the purchaser is IRVING DOMNITCH.

"2. The purchaser, having exercised his option, the first section of paragraph number 1 is modified to read:

'Subject to approval of its Board of Directors, the trustees and the reorganization court, as required by law, the seller agrees to sell and the buyer agrees to purchase the following described property.'

"3. The description of the property to be sold and purchased herein is more particularly described as follows:

As being those three parcels of land as set forth and described in a survey made by Fred J. Powell, dated May 12, 1966, the said survey is initialed by the parties hereto, attached to the agreement and made a part hereof.

"Seller represents that the said described land is marketable and insurable.

"4. The closing of title and delivery of deed shall be on the 31st day of March, 1971, or within 30 days after seller has notified purchaser, by certified mail, that this transaction has been approved by its Board of Directors and the trustees and the reorganization court as aforesaid, whichever date is sooner."

Other portions of the rider provide for a further payment on account of the purchase price in the sum of $20,000; and obligate the purchaser to accept title subject to existing liens of record against "the grantor" but require the seller to indemnify the purchaser against payment of such liens, and to assure the purchaser that such indemnification will be satisfactory to a title insurance company.

The rider was signed on behalf of both New York Connecting and the Trustees of Penn Central, by Clyde Nichols, designated as "manager-real estate."

Separately and together, the "option" and "rider" agreements would provide many interesting topics for discussion in a class in legal draftsmanship. Both from the documents themselves, and from the affidavits and other evidentiary material presented by counsel for the Domnitch interests, it is evident that there may be many legal obstacles to

successful prosecution of the New York litigation. However, the merits of the Domnitch claims are not before me at this time. The issue is whether the New York litigation should be enjoined.

On June 21, 1970, all of the property of the New York Connecting (including the air rights here at issue, and the fee underlying those air rights) was "property in the possession of the Debtor," Penn Central Transportation Company, by virtue of the lease. Order No. 1 in the Penn Central proceedings clearly prohibits all persons from attempting, through litigation or otherwise, to interfere with the Debtor's possession or title, except with leave of this Court. Counsel for the Domnitch interests advance several arguments.

In the first place, it is argued that air rights were not included in the lease from New York Connecting to Penn Central, hence a suit to compel conveyance of those air rights would not fall within the purview of Order No. 1. There is plainly no merit in this contention. The lease covers

"all of the right, title and interest of the New York Connecting Railroad Company in and to all of its property, real, personal and mixed, including equipment, machinery, tools, materials and supplies, cash, securities, claims, intangibles, choses in action, rights (contractual or otherwise), obligations, interests, leaseholds, trackage rights, licenses and franchises . . . .".

The further argument is made that, since the agreements which Messrs. Domnitch seek to enforce contemplate continued operation of a railroad, and contain elaborate provisions for accommodating continued rail operations notwithstanding possible development of the air rights, pursuit of the New York litigation to a successful conclusion would not interfere with the continued possession and use of the "property of the debtor," Penn Central. This argument is likewise unpersuasive. The Trustees of Penn Central would be di-

vested of their possession of and interest in the air rights themselves. Moreover, notwithstanding the precautionary provisions of the agreement, development of the air rights would inevitably infringe, to some extent, upon Penn Central's use of the surface. And finally, the agreements which are sought to be enforced purport to grant to the purchasers, for all time to come, a right of first refusal with respect to the surface and subsurface (i. e., the balance of the fee).

Finally, it is argued that Penn Central is not actually conducting rail operations over the property, hence the issue of possible interference of rail operations is moot. On the basis of Mr. Peet's testimony, it seems clear that the property is in fact being used for rail operations, at least to some extent. Be that as it may, Order No. 1 is not limited in scope to rail properties of the Debtor. This argument is plainly without merit.

The foregoing discussion demonstrates that, in my view, the New York litigation should not be permitted to proceed, insofar as it may affect the leasehold interest of Penn Central in the air rights and the surface of the property. But, since neither Penn Central nor its trustees have been named as parties in the New York litigation, it may be that the interests of Penn Central cannot be adversely affected by the New York litigation, and that Order No. 1 in the Penn Central proceeding is of no consequence. Adopting that approach, it would seem that the issue would be whether this Court should assume that the state court can or would limit its grant of relief, if Messrs. Domnitch prevail in that litigation, to relief which will not affect Penn Central's interest. The record discloses an anomaly: The 1965 option agreement named New York Connecting as the seller and both Domnitchs as the buyers. The 1970 "rider" modified the earlier agreement so as to name both New York Connecting and the Trustees of the Penn Central as the sellers, and to designate Irving Domnitch as the

buyer. In the New York litigation, both Domnitchs are named as plaintiffs, but only the New York Connecting and the Indenture Trustee of its mortgage are named as defendants. And plaintiffs in that action seek enforcement of the 1965 agreement as modified by the 1970 agreement.

Conceivably, the New York court might be persuaded that the plaintiff cannot prevail, because of the absence of an indispensable party. Or, that court might conclude that relief must be limited to New York Connecting and the mortgage holder. But, having attempted to analyze the plaintiff's pleadings in the New York action and the plaintiff's presentations in this Court, I am persuaded that either such conclusion would run counter to the expectations of the Domnitch interests. I am satisfied that the New York litigation is intended by the Domnitchs to achieve a result which would in fact interfere with Penn Central's interests.

Moreover, I am inclined to believe that there is merit in the contention of the Indenture Trustee that it would be inequitable to permit plaintiff to proceed, even as against only New York Connecting and the Indenture Trustee, in view of the relationship between New York Connecting and Penn Central, and the restraints heretofore imposed upon the Indenture Trustee. Penn Central owns 100 percent of the stock of New York Connecting. New York Connecting is an integral part of the Penn Central system. Order No. 170 was entered in an attempt to maintain the status quo with respect to all leased lines, and to preserve the Penn Central system as a unit, without finally resolving issues as to the extent of this Court's jurisdiction over leased lines not themselves in reorganization. It restrains creditors of lessor railroads from taking legal action to enforce their claims against the lessors, except after giving 14 days' notice of intention to proceed, filed with this court and served upon all interested parties. It was and is the purpose of this Order to make it possible for this Court to

evaluate each situation that might arise, and to determine whether enforcement of a particular claim against a lessor would pose a sufficient threat to the Penn Central system and its orderly reorganization as to justify assertion of jurisdiction to restrain such enforcement. Under the circumstances, I am satisfied that this Court had jurisdiction to enter Order No. 170. Since the Domnitchs have never sought to comply with Order No. 170 or to be excused from its terms, it would, at the least, be appropriate to restrain them from proceeding with the New York litigation until they have complied with Order No. 170. However, since all interested parties have now had their opportunity to be heard, in the interest of efficiency I shall treat their response to the Indenture Trustee's present petition as a request to be permitted to proceed with the New York litigation notwithstanding the provisions of Order No. 170.

█ It is manifest that plaintiffs seek a conveyance of the air rights free and clear of the lien of the mortgage. Their claim against the Indenture Trustee rests upon the assertion that, under the terms of the trust indenture, the Indenture Trustee is required to release the property from the lien of the mortgage upon deposit of the purchase price with the Indenture Trustee. (Whether or not this release provision remains applicable even after default under the mortgage is in dispute; I express no view on that issue.) The mortgage undoubtedly takes precedence over the subsequent option agreement. When the initial default occurred, in October of 1970, the Indenture Trustee refrained from exercising its remedies, which might have included foreclosure, as well as a wide range of other possibilities. In part, this was undoubtedly due to the likelihood that Order No. 1 in the Penn Central proceedings would be held applicable to prevent any attempt by the Indenture Trustee to enforce its remedies; and in part it was due to the express provisions of Order No. 170. It would be most inequitable if this Court were

now to permit the Domnitchs to proceed, while continuing to restrain the Indenture Trustee. To permit both parties to proceed would obviously be totally inconsistent with the proper exercise of the responsibilities of a reorganization court; moreover, it would not likely be helpful to the Domnitch interests.

For all of the foregoing reasons, I have concluded that the plaintiffs in the New York litigation should not be permitted to proceed further.